# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| GILES CONSTRUCTION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TOOELE INVENTORY SOLUTION, INC., et al. <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 2:12-cv-37 <br><br> Judge Robert J. Shelby |

This case is about the alleged misuse of proprietary information. Plaintiff Giles Construction, LLC alleges that Defendants Tooele Inventory Solution, Inc., Roger Earl, Karla Domire, Brian Domire, Russell Stapleton, and ATI Titanium, Inc. improperly disclosed and used its trade secrets related to barrel processing and pricing. Giles Construction alleges that Defendants violated the Computer Fraud and Abuse Act (CFAA), the Lanham Act, and the Utah Uniform Trade Secret Act (UTSA). Further, Giles Construction alleges interference with contractual relations, unjust enrichment, and conversion. Before the court are Defendants' motions for summary judgment. For the reasons stated below, the court grants the motions and concludes that Giles Construction's claims fail as a matter of law.

## THE PARTIES

ATI is a large company with operations throughout the world, including in Rowley, Utah. ATI manufactures and sells titanium. The company uses barrels to ship its product. Russell Stapleton is the purchasing manager at ATI's Rowley facility; Karla Domire is his assistant. For several months in 2011, Giles Construction supplied, refurbished, and shipped barrels for ATI. Ms. Domire's husband, Brian Domire, provided trucking and delivery services for Giles Construction. Tooele Inventory is a Utah company that currently provides barrel processing services to ATI. ATI hired Tooele Inventory after it submitted a lower bid than Giles Construction. Roger Earl is the owner of Tooele Inventory.

## BACKGROUND

ATI began operations in its Rowley facility in 2007. Initially, the company's employees stored, cleaned, repainted, palletized, and shipped its barrels. In early 2011, Mr. Stapleton sought a vendor to take over the barrel processing. ATI eventually hired Giles Construction to provide barrel processing services, which required Giles Construction to obtain, clean, paint, stencil, palletize, shrink wrap, store, and deliver barrels to ATI's Rowley facility. ATI provided a sample barrel, along with the specifications for barrel dimensions. Giles Construction began using a company named Industrial Container Services as its barrel supplier. Industrial Container Services maintains a website that a Giles Construction employee found in a fifteen-minute internet search.

Giles Construction and Industrial Container Services had an open account, but not a binding contract. Similarly, there was no contractual agreement that required ATI to exclusively use Giles Construction for barrel processing. Rather, the companies had an open agreement that Giles Construction would fulfill any purchase orders ATI sent.

In Fall 2011, ATI began searching for a less expensive barrel processing service. ATI sought a vendor from which it could directly purchase barrels, as well as a separate vendor that could provide barrel processing. At the direction of Mr. Stapleton, Ms. Domire searched for both barrel suppliers and barrel processors. During Ms. Domire's inquiries, she was referred multiple times to Industrial Container Services. Ms. Domire also spoke with Mr. Domire's friend, Mr. Earl, regarding barrel processing. At the conclusion of Ms. Domire's search, only Giles Construction and Mr. Earl were interested in submitting bids to provide barrel processing. The parties provided price quotes to ATI. Mr. Earl's recently formed company, Tooele Inventory, provided a bid that was thirty percent lower than Giles Construction's bid. Based on the lower price, ATI hired Tooele Inventory.

Giles Construction sued three months after losing the bid, alleging that Mr. Stapleton, Ms. Domire, and Mr. Domire revealed trade secrets to Mr. Earl, which made it possible for Mr. Earl to anticipate Giles Construction's bid and submit a lower one.

## ANALYSIS

I. **Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[2] Importantly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3]

---

[1] Fed. R. Civ. P. 56(a).
[2] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Computer Fraud and Abuse Act Claim

Giles Construction contends that each defendant violated Section 1030 of the CFAA by accessing and misusing proprietary information. The CFAA prohibits parties from accessing a computer without authorization or from exceeding authorized access.[4] Giles Construction alleges that Mr. Stapleton and Ms. Domire exceeded authorized accessed by obtaining Giles Construction's proprietary information on ATI computers and then divulging that information to competitors in violation of ATI's corporate guidelines.

At the outset, it appears that at least some of the defendants did nothing to implicate the statute. There is no evidence that Mr. Domire, Mr. Earl, or Tooele Inventory accessed any information. Rather, Giles Construction alleges only that those parties received information from Mr. Stapleton and Ms. Domire. Because Mr. Domire, Mr. Earl, or Tooele Inventory did not access information, the statute does not apply to their conduct.

Next, the court must determine the meaning of unauthorized access under the statute. The CFAA prohibits individuals from "access[ing] a protected computer without authorization, or exceed[ing] authorized access." It is undisputed that Mr. Stapleton and Ms. Domire had authorization to access the information at issue. In fact, they accessed the information on their company's computers. The question presented by the parties is whether Mr. Stapleton's and Ms. Domire's alleged subsequent misuse of the information amounts to exceeding authorized accessed. There is a division among federal courts regarding this question and the Tenth Circuit has not squarely addressed it. The court provides an overview before reaching its own conclusion.

Federal courts are divided on the meaning of "exceeds authorized access." Some courts, including the Fourth and Ninth Circuits, have confined the clause to mean the procurement of

---

[4] 18 U.S.C. § 1030(a)(1).

information from a computer, not the subsequent use of that information.[5] In other words, "an employee given access to a work computer is authorized to access that computer regardless of his or her intent to misuse information and any policies that regulate the use of information."[6] It appears that a majority of courts weighing in on the issue have adopted this narrow construction. And the trend among courts appears to be in this direction over time. Other courts, including the First, Seventh, and Eleventh Circuits, have given the statute a broad construction.[7] Under the broad construction, "if an employee has access to information on a work computer to perform his or her job, the employee may exceed his or her access [by] misusing the information on the

---

[5] *See, e.g.*, *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 203–07 (4th Cir. 2012) (holding that employee who accessed information and provided it to his employer's competitor did not violate CFAA); *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc) (holding that "the CFAA does not extend to violations of [employee] use restrictions," where employee used information from employer's computer to set up competing company); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (holding that "nothing in the CFAA suggests that a defendant's authorization to obtain information stored in a company computer is 'exceeded' if the defendant breaches a state law duty of loyalty to an employer, and we decline to read such a meaning into the statute for the reasons explained above"); *Amphenol Corp. v. Paul*, 993 F. Supp. 2d 100, 110 (D. Conn. 2014) (differentiating exceeding unauthorized access and misusing information); *JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 522 (S.D.N.Y. 2013) (holding that "an employee 'exceeds authorized access' when he has permission to access certain information on a computer, but accesses other information as to which he lacks permission"); *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 621 (E.D. Pa. 2013) ("Because [Defendants] had authorization to access their work computers, they did not hack into them when they downloaded the files. Their alleged misuse of the files may have remedies under other laws, but not under the CFAA."). A number of district courts from the Tenth Circuit, including the District of Utah, have applied the narrow approach. *See Pulaski Bank v. First State Bank of St. Charles, Mo.*, Civ. Act. No. 12-2433- KHV, 2012 WL 3062778, at *2 (D. Kan. July 26, 2012) (holding that "'exceeding authorized access' occurs only when initial access to computer is permitted but access of certain information is not permitted—defendants' intent does not determine whether they acted without authorization or have exceeded authorized"); *Koch Indus., Inc. v. Does*, No. 2:10-cv-1275-DAK, 2011 WL 1775765, at *8 (D. Utah May 9, 2011) ("The CFAA addresses only the act of trespassing or breaking into a protected computer system; it does not purport to regulate the various uses to which information may be put."); *U.S. Bioservices Corp. v. Lugo*, 595 F.Supp.2d 1189, 1193 (D. Kan. 2009) (holding that the CFAA "targets 'the unauthorized procurement or alteration of information, not its misuse or misappropriation'" (quoting *Brett Senior & Associates, P.C. v. Fitzgerald*, Civ. Act. No. 06-1412, 2007 WL 2043377, at *3 (E.D. Pa. July 13, 2007)).

[6] *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d at 615.

[7] *See, e.g.*, *United States v. John*, 597 F.3d 263, 271–72 (5th Cir. 2010) (holding employee "exceed[ed] authorized access" by using employer's information to perpetrate fraud); *United States v. Rodriguez*, 628 F.3d 1258, 1263–64 (11th Cir. 2010) (employee "exceed[ed] his authorized access" by accessing employer's information for a "nonbusiness reason"); *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006) (finding that employee exceeded authorized access by accessing information after he had breached duty of loyalty); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 581 (1st Cir. 2001) (concluding that employee who disclosed employer's information to a competitor exceeded authorized access by breaching employer confidentiality agreement). *See also Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1127–29 (W.D. Wash. 2000) (considering the CFAA's legislative history and concluding the statute supports a claim against a company that received information from competitor's former employees).

computer, either by severing the agency relationship through disloyal activity, or by violating employer policies and/or confidentiality agreements."[8]

After considering the relevant case law, the court concludes that the narrow construction is appropriate: an individual does not exceed authorized access by misusing information she had authority to access in the first place. The CFAA's plain language compels this conclusion. The statute defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."[9] This definition "speaks to access, not use."[10] It does not encompass misappropriation or misuse of information obtained through permitted access.

Additionally, the statute as a whole supports a narrow construction.[11] The statute defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."[12] "Loss" means "a reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."[13] These definitions confirm that the CFAA seeks to prevent hacking, "which compromises the integrity and availability of data and may cause an interruption of computer service."[14] The statute does not provide damages for the subsequent misuse of information. In view of the unambiguous language of the statute, the court is hesitant to extend remedies under federal law when ample state law remedies exist for the complained-of conduct. Absent clear congressional guidance, the court is reticent to

---

[8] *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d at 615.
[9] 18 U.S.C. § 1030(e)(6).
[10] *JBC Holdings NY*, 931 F. Supp. 2d at 522.
[11] *See id. See also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010).
[12] 18 U.S.C. § 1030(e)(8).
[13] *Id.* at § 1030(e)(11).
[14] *Orbit One Commc'ns*, 692 F. Supp. 2d at 386.

enlarge its traditionally limited jurisdiction by extending the CFAA's reach and thus providing a broader cause of action.

The court need not go beyond the statute's plain text. But even if the text were ambiguous, the rule of lenity would compel a narrow construction.[15] The CFAA is primarily a criminal statute, though it provides a private right of action in civil cases for the same conduct.[16] The rule of lenity dictates that an ambiguous criminal statute should "be interpreted in favor of the defendants subjected to them."[17] Put simply, Congress must speak clearly if it intends to create a federal crime.[18] In the CFAA, Congress has not clearly criminalized the *misuse* of lawfully obtained computer information. And if that conduct is not criminal under the statute, the conduct cannot provide a basis for a civil cause of action.

Here, it is undisputed that Mr. Stapleton and Ms. Domire had authorization to access the information at issue. Indeed, Mr. Stapleton and Ms. Domire accessed the information on their company's computers. Giles Construction's contention is that Mr. Stapleton and Ms. Domire violated the CFAA by disclosing the information in violation of ATI's corporate guidelines. The alleged misuse does not implicate the CFAA. The court thus grants summary judgment in favor of Defendants and dismisses the CFAA claim.

### III. Lanham Act Claim

Giles Construction contends that Defendants violated Section 43 of the Lanham Act.[19] The Lanham Act is a consumer-protection statute designed to "secur[e] to a mark's owner the goodwill of his business and protect[] consumers' ability to distinguish among competing

---

[15] *See, e.g.*, *Orbit One Commc'ns*, 692 F. Supp. 2d at 386; *Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc.*, No. 08-CV-3980 JS ETB, 2009 WL 2524864, at *6 (E.D.N.Y. Aug. 14, 2009); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 966 (D. Ariz. 2008).
[16] *Orbit One Commc'ns*, 692 F. Supp. 2d at 386.
[17] *United States v. Santos*, 553 U.S. 507, 514 (2008).
[18] *Jones v. United States*, 529 U.S. 848, 858 (2000).
[19] 15 U.S.C. § 1125.

producers."[20]  Under Tenth Circuit law, "to succeed on a false advertising claim under § 43(a) of the Lanham Act, the plaintiff must demonstrate: (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff."[21]

Giles Construction's claim misses the mark.  The claim is not based on false advertising or consumer misperception.  Instead, Giles Construction maintains that Defendants violated the Lanham Act in two ways: (1) Mr. Stapleton and Ms. Domire leaked confidential information to Mr. Domire and Mr. Earl, and (2) Mr. Earl used the confidential information to prepare Tooele Inventory's competitive bid.  Giles Construction has submitted no evidence that Defendants made misleading representations to consumers in connection with commercial advertising.  What's more, there is no evidence that Defendants made any representation to any consumer.  Simply put, the Lanham Act does not reach Defendants' alleged conduct.  The court grants summary judgment in favor of Defendants and dismisses the Lanham Act claim.

## IV. Supplemental Jurisdiction

Under 28 USC § 1367(c), a federal court may decline to exercise supplement jurisdiction when it "has dismissed all claims over which it has original jurisdiction."[22]  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[23]  That said, this court has discretion to dispose of state claims after federal claims

---

[20] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 763 (1992).
[21] *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002).
[22] 28 U.S.C. § 1367(c)(3).
[23] *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  *See also Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

have been dismissed when, "given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction."[24]

Giles Construction filed this case well over three years ago. The pretrial practice has included amended pleadings, discovery motions, and hearings before the Magistrate Judge. The parties have fully briefed and extensively argued the state law claims. The court has carefully reviewed and considered the parties' arguments and is prepared to address the viability of the state claims. Given the substantial time and resources the parties and the court have invested, the court concludes that it would be judicially economical, convenient, and fair to resolve the remaining state law claims. Doing so would give the parties a clear resolution of their claims without imposing additional delay and expense associated with refiling and litigating the state law claims further in state court. This is especially so here, as it is apparent that Giles Construction's state law claims fail as a matter of law.

V. **Trade Secrets Claim**

Giles Construction contends that Mr. Stapleton and Ms. Domire misappropriated trade secrets. Under the Utah Uniform Trade Secret Act (UTSA),

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[25]

---

[24] *Thatcher Enters.*, 902 F.2d at 1478.
[25] Utah Code § 13-24-2(4).

Giles Construction maintains that its trade secrets consisted of (1) the identity of its barrel supplier (Industrial Container Services), (2) its pricing information, and (3) its entire process, which includes "providing new, used and refurbished drums to ATI including pick up, inspection, disposal, refurbishing and painting, weighing, marking, storage, coordination, palletizing, shrink wrapping, inventory/stocking and delivery and the associated pricing."[26]

The identity of Industrial Container Services as a barrel supplier does not constitute a trade secret. "Where information alleged to be a trade secret can be readily ascertained by performing a basic research task, the information does not qualify as a trade secret."[27] Industrial Container Services has a publicly available website. When Giles Construction initially researched barrel suppliers, its employee found the website in approximately fifteen minutes. Further, several businesses referred Ms. Domire to Industrial Container Services when ATI decided to locate its own barrel supplier. In sum, Industrial Container Services was no secret—information regarding the company was readily ascertainable through simple, public research.

Likewise, Giles Construction's pricing is not a trade secret. To prove pricing is a trade secret, a plaintiff must submit "evidence indicating that [the] pricing information or [the] method for obtaining pricing information is unique or especially innovative, such that it could not be readily duplicated by others in the industry."[28] At trial, the ultimate burden of persuasion rests with the trade secret plaintiff. At this stage, however, the burden of production rests with Defendants (the movants) to show that Giles Construction's pricing does not meet the compilation trade secret standard. Defendants "may carry [their] initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or

---

[26] Giles Construction Initial Disclosures, Attachment A.
[27] *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 326 (Utah Ct. App. 2012). *See also Microbiological Research Corp. v. Muna*, 625 P.2d 690, 700 (Utah 1981); *Medspring Group, Inc. v. Feng*, 368 F. Supp. 2d 1270, 1278–79 (D. Utah 2005).
[28] *CDC Restoration & Const.*, 274 P.3d at 324.

by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[29]

Defendants point out that Giles Construction has not articulated how its pricing is especially innovative or unique. Rather, Giles Construction has simply stated in interrogatory responses that its pricing is proprietary. Defendants also point to a lack of specificity in the deposition testimony that Giles Construction contends supports its claim. Giles Construction submits testimony from Mr. Stapleton that Giles Construction provided competitive pricing and that it took the company some time and effort to be able to fully run its process. That testimony does not articulate how Giles Construction formulated its pricing, or why the pricing was unique or innovative. The court finds that Defendants have carried their burden of production to show that Giles Construction cannot meet its burden of persuasion at trial. Put differently, Defendants have established that Giles Construction does not have enough evidence to prove its claim at trial. The company's pricing is not a trade secret.

Neither is Giles Construction's barrel processing a compilation trade secret. To establish a compilation trade secret, a plaintiff must demonstrate that the process is "[a] unique combination of generally known elements or steps [that] . . . represents a valuable contribution attributable to the independent efforts of the one claiming to have conceived it."[30] Giles Construction claims that its process as a whole is proprietary. But there is ample evidence that ATI instructed Giles Construction on much of the process. Further, Defendants submit uncontroverted evidence that palletizing and wrapping barrels for delivery was a well-known process in the shipping industry. Even if Giles Construction carried out the process in a more efficient manner, it does not put forth specific evidence explaining how its process was so unique

---

[29] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).
[30] *Microbiological Research Corp.*, 625 P.2d at 696 (citation omitted).

or innovative as to constitute a trade secret. Giles Construction has not pointed to record evidence to dispute Defendants' evidence that the barrel processing was well known in the industry.

In the end, the court finds that the undisputed facts compel the court to enter judgment as a matter of law in Defendants' favor.

## VI. Preemption Under the Utah Uniform Trade Secrets Act

The UTSA preempts "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."[31] In *CDC Restoration & Construction, LC v. Tradesman Contractors, LLC*,[32] the Utah Court of Appeals interpreted the UTSA preemption provision to mean that the statute "abolish[es] all freestanding alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information."[33] Giles Construction argues that the UTSA does not preempt its interference and unjust enrichment claims because they are alternative claims and are not based solely on the misappropriation of trade secrets.[34] Utah courts have considered and rejected these arguments.

The UTSA preemption reaches any state law claim that is based on allegations of misuse of confidential information, regardless of whether the claim contains additional, separate allegations.[35] Therefore, the UTSA preempts claims that are to some degree based on—or, dependent on—misuse of information even if they are not based *solely* on the misuse of

---

[31] Utah Code § 13-24-8. There are three remedies that fall under the exception to the preemption provision: "(a) contractual remedies, whether or not based upon misappropriation of a trade secret; (b) other civil remedies that are not based upon misappropriation of a trade secret; or (c) criminal remedies, whether or not based upon misappropriation of a trade secret." *Id.*

[32] 274 P.3d 317 (Utah Ct. App. 2012).

[33] *CDC Restoration & Const.*, 274 P.3d at 329 (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004)).

[34] The UTSA does not preempt the Lanham Act claim, but that claim fails independently for the reasons articulated above. The statute's plain language preempts "conflicting tort, restitutionary, and other law of this state providing civil remedies" and does not purport to preempt federal statutes. Utah Code § 13-24-8(1).

[35] *CDC Restoration & Const.*, 274 P.3d at 333.

information. Stated differently, if the claim fails without the allegations regarding misuse of information, the UTSA preempts it. This is so even if the purported confidential information does not constitute a trade secret, which forecloses the ability to alternatively plead causes of action if they are based on the misuse of information.[36] Here, each state law claim is based on the alleged unauthorized use of information: "without reliance on the misuse of confidential information,"[37] each claim would fail as a matter of law. The UTSA preempts the remaining state law claims.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motions for Summary Judgment (Dkt. Nos. 67, 69, 71). Accordingly, the court DISMISSES WITH PREJUDICE Giles Construction's claims. The court also DENIES AS MOOT Giles Construction's Motion to Exclude Expert Report (Dkt. 63). Lastly, the court DENIES the pending Motion to Seal (Dkt. 64). The court directs the Clerk of Court to close the case.

IT IS SO ORDERED, this 2nd day of June, 2015.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[36] *Id.* at 330 ("[T]he UTSA preempts claims based on the unauthorized use of information, irrespective of whether that information meets the statutory definition of a trade secret.").

[37] *Id.* at 333.